### Muller, et al. v. Swann. By et al.

(Decided April 16, 1915.)

### Appeal from Boyle Circuit Court.

1. Assault and Battery—Damages—Evidence.—In an action for damages for assault and battery, evidence examined and held sufficient to sustain a verdict in favor of plaintiff.

2.   Trial—Argument of Counsel.—In an action for damages for assault
     and battery, argument of counsel considered and held not suffi-
     ciently prejudicial to justify a reversal.

C. C. BAGBY, CHENAULT HUGUELY and HENRY JACKSON
for appellants.

EMMET PURYEAR and ROBERT HARDING for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

In this action for damages for assault and battery
plaintiff, Carrie Swann, suing by her next friend, Agnes
Swann,. recovered a verdict and judgment against the
defendants, C. P. Muller and Mary E. Muller, his wife,
for $600.00.   Defendants appeal.

Defendants insist that the verdict is not sustained
by the evidence and that counsel for plaintiff were guilty
of misconduct in their argument to the jury.

Defendants conduct a tailoring and clothes-pressing
shop on Main street in Danville.   They had no children
of their own, but had adopted two orphans.   One of these
orphans was a little girl twelve years of age called
Eleanor.   Eleanor was raised in the belief that she was
the child of defendants.   Eleanor and plaintiff, a child
fourteen years of age, attended the same school.   It
appears that plaintiff taunted Eleanor with the fact that
she was an orphan and did not know who her parents
were, and was otherwise disagreeable to her.   Because
of such treatment Eleanor became dissatisfied at school
and reported the condition of affairs to defendants.

The circumstances attending the alleged assault and
battery are, in brief, as follows:   On the afternoon of
October 1st, 1913, plaintiff, in company with her younger
sister, passed defendants' shop. , Mrs. Muller was sweep-
ing a stairway which led from the street to the second
story of the building.   There is a small space between
the bottom of the stairway and the door which leads
immediately onto the street.   Mrs. Muller saw plaintiff.
passing by and asked her to come in.   From this point
on the evidence is conflicting.   According to plaintiff's
evidence, Mrs. Muller grabbed her by the arm and pulled
her into the hallway.   Mrs. Muller began to take plaintiff
to task for her treatment of Eleanor.   Plaintiff made
some impertinent remarks.   Mrs. Muller then threw her
on the steps and beat and pulled her and stuck her fin-

gers in her mouth. In the meantime the door had been closed. At this juncture Mr. Muller appeared and told Mrs. Muller that she was not hitting plaintiff hard enough and to hit harder. He then came down the steps and kicked plaintiff below the eye. Miss Craig, who was across the street at the time, says that she saw a child on the steps and a woman beating her on the neck. At the same time a dog was barking. The beating continued for some time. The child was crying. The door was closed and the noise went on. The child came very rapidly out of the door with her hair hanging down her back. The child went down the street crying. Louise Swann, a sister of plaintiff, says that she saw Mrs. Muller shake her finger in plaintiff's face. She then heard plaintiff "holler." She also says that she saw Mrs. Muller beating plaintiff. W. G. Dunlap, who is engaged in business in the building adjoining the Mullers, saw plaintiff going down the street crying. Agnes Swann, plaintiff's sister, says that when Carrie reached home she had a knot over her eye and her mouth was bleeding. She also had a bruise on her shoulder. Margaret Caldwell testifies that Carrie came out the door as if she had been pushed out. Carrie was crying at the time. Carrie had a knot over her eye, of which she complained.

Mrs. Muller says that her only purpose in calling plaintiff in was to remonstrate with her in regard to her treatment of Eleanor. If she caught plaintiff by the arm it was with all kindness. She told plaintiff that she must stop talking about Eleanor. When she pinned plaintiff down to the truth plaintiff became enraged and began to scream, fight and bite her. Plaintiff struck her in the breast, pushed her and bit her finger. When plaintiff bit her finger she was merely trying to keep her from screaming. At no time did she strike plaintiff. While Carrie was in there, there was a little dog on the steps that was barking and making a great deal of noise. Mrs. Muller further says that in talking she uses her hands a great deal, and this might have led people to think that she was beating plaintiff. She also says that when Mr. Muller came down the steps he took Carrie by the arm and led her to the front door. Mr. Muller says that when he came to the head of the stairway leading down to the street he saw Mrs. Muller and plaintiff at the bottom of the steps. Plaintiff was cry-

ing and screaming. He called to his wife to let plaintiff go out; that people outside might think something was wrong. He then took plaintiff by the arm and led her out of the door. At no time did he kick or strike her. As he came down the steps a little dog was on the steps barking. The dog was in his way and he kicked or pushed the dog aside. Neither he nor his wife struck or kicked plaintiff. Plaintiff's teacher testified that plaintiff was in regular attendance at school from October 2nd, the day after the trouble, until the 17th of the month. Dr. Smith testified that plaintiff came to see him, but could not recall the condition of her eye.

In support of their position that the verdict is not sustained by the evidence, counsel for defendants proceed on the assumption that the story of plaintiff is not corroborated in its essential features and present a very strong argument, based on the theory that the brutal attack recounted by plaintiff is altogether out of keeping with the lives of defendants, who had shown their love for humanity by taking two orphan children to rear and educate. We have frequently ruled, however, that mere disparity in the number of witnesses is not of itself sufficient to justify our saying that a verdict is flagrantly against the evidence. Under our system, the decision of questions of fact is left with the jury and it is for them to say what credence they will attach to the evidence which they hear. Under this rule we would not be at liberty to disturb the judgment merely because plaintiff testified one way and defendants testified the other, and plaintiff's testimony was not supported by the testimony of any other witness. As a matter of fact, however, plaintiff's story of the occurrence is not unsupported. Miss Craig says that she saw a woman beating a child and the beating continued for several minutes. Clara Harmon and Louise Swann also corroborate plaintiff. Margaret Caldwell saw a knot over plaintiff's eye. Several witnesses testified that plaintiff came rapidly out of the door. Opposed to this evidence we have only the statements of the defendants and the improbability of the occurrence growing out of their well-known kindness to children. Manifestly it cannot be said that the verdict is flagrantly against the evidence. Were we to reverse this case on that ground, we would have to change our rule and substitute our judgment on questions of fact for that of the jury.

In his argument to the jury one of plaintiff's attorneys said:

"Gentlemen, this is the kind of thing the Grand Jury of this county ought to have acted upon."

In answer to the criticism of plaintiff's older sister in hunting an attorney, the same attorney also said:

"Gentlemen, if she were a man instead of a woman, she should have been hunting a shotgun instead of hunting a lawyer."

To the above statements the defendants objected, and moved the court to withdraw the statements from the consideration of the jury. In response to defendants' motion the court said to the jury:

"Gentlemen, you will consider only the evidence." The court, however, refused to withdraw the statements from the jury and to sustain defendants' motion to instruct the jury that the statements should not be considered by them.

The attorney who made the closing argument for plaintiff used the following language:

"Do as you would do for your own child whose father and mother had gone to God."

Again he said:

"It was enough to incite a mob" (referring to the alleged conduct of defendants).

He also used the following language:

"Whose father and mother are sleeping in the grave."

To the foregoing language defendants' counsel objected at the time and moved the court to instruct the jury not to consider it. The court refused to sustain the motion. The court had previously excluded from the jury evidence of the fact that plaintiff was an orphan. Of course, counsel for plaintiff had the right to argue the case from the standpoint of plaintiff's evidence. If plaintiff and her witnesses are to be believed, the assault was without justification. The conduct of defendants being in evidence, counsel had the right to characterize their conduct and in doing so were not necessarily limited to mere "soft impeachment." Where the evidence justifies the comments it is practically impossible to lay down any rule limiting the character of expressions that counsel may employ. Whether or not severe and denunciatory language exceeds the bounds of legitimate argument will depend largely on the character of the case,

the facts in evidence and its effect on the jury as shown by its verdict. The language complained of was merely argumentative. It introduced no facts not in evidence. The only instances in which counsel went outside the record and called attention to matters not in evidence were when he referred to the fact that plaintiff's parents had gone to God or then were sleeping in their grave. While this language was improper and it may be that counsel in denouncing the conduct of defendants went to the very limit of propriety, yet, in view of the fact that punitive damages were recoverable and the jury returned a verdict for only $600.00, we are not inclined to hold the argument of counsel sufficiently prejudicial to justify a reversal of the case.

Judgment affirmed.